Good morning, Your Honors. Bo Sterling on behalf of Appellant Roberto Popa. I'd like to begin, if I may, with our challenge to Counts 11 and 13 of the course-in-proceeding indictment. These are the aggravated identity theft statute counts that resulted in the 24-month mandatory consecutive sentence. And you're challenging both because the sentence runs concurrently, and if you don't, you've got a problem. Right, right. You can lump them together, but together they have to run as a separate 24-month concurrent sentence. Now our argument here and the argument we've made in our briefs is under the statute 1028a sub a, which deals with means of identification of another person, the false driver's license, the driver's license that bear the name of the victim but no other information from the victim, is not a means of identification of another person as that term is used in the statute. And I would note that the statute, as it's set up, does have a section that deals, that separates, or makes a distinction between false identification documents, such as this one, and the requirement under 1028a, which is that a document, in order to be a means of identification of another, has to identify a specific individual, which this yes. We're not just dealing with a driver's license. That's true. And I think the statute uses in conjunction with or along with or something like that. That's right. You have the companion. Don't we have credit cards here? We do. And of course, that's alluding to the argument that the government is making here. You have the companion offense, which deals with the use of the access device. The access device fraud and the access device consists of the credit card number, and that was certainly one of the documents that was tendered during these companion crimes. The separate offense, the 1028a offense, is the use of the means of identification of another in conjunction with that other companion offense. So you do have the two documents. And the government's argument is, well, regardless of whether or not that's a false driver's license or whether it identifies a specific person sufficiently, you still have the credit card, and the credit card is an identification document. And our response to that is that Congress intended for this 1028a offense, this consecutive 24-month sentence offense, to be a separate crime. And in order to be a separate crime, it has to add something more than simply the access device as an identification document. I mean, I understand the syllogism. The statute says identification includes an access device or vice versa. So, I mean, there's some overlap there in terms of the definition. But if you look at the structure of the statute, Congress clearly intended for it to be a separate crime requiring some separate conduct, in particular the use of an identification of another person, meaning some document with specific identifiable information in the form of a name or a number. And we just don't have that here. And I would encourage this Court to adopt the reasoning of U.S. v. Mitchell, which is the case we discussed in our brief, the Fourth Circuit 2008 case, which essentially mirrors the argument that I'm making here. Does the Court have any other questions on that particular issue? Tell me again why the license, the false license wasn't? The false? Doesn't cut it? The false license had the name of the victim. All the other information on there, the address, the license number, was either that of Mr. Popa or made up. It did not identify together with the name on the card a specific person. And the reasoning of Mitchell is that the name alone. But it had the name of the victim, right? It had the name of the victim. The reasoning under Mitchell is that the name of the victim alone is not enough to specifically identify an actual person, because for almost any name that you can come up with, there's going to be more than one person with that name. So unless you have, for example, a driver's license number that's an actual number of that person, or an address, or some other information that ties that name together with that person, you don't have the means of identification. Another, you just have a fake ID. And why isn't the use of the credit card the means of identification? Because that's the crime? The crime is using the credit card. And the credit card, and specifically the access device, which is the number on the credit card, it's that use that's the crime. Otherwise, every single time that you used a credit card that had a credit card number on it, you'd be committing this crime. How about the enhancement in relationship to the conspiracy? I'm sorry. I don't understand the question. I thought one of the crimes that's being enhanced, I mean, isn't there, I can't remember which is which. Oh, yes, Your Honor. 11 and 13, right? Right, right. Isn't one of them a conspiracy? No, you're correct, Your Honor. But the counts 11 and 13 relate only to the access device counts. They don't relate to the counts for the conspiracy. Okay. Are you contending that your argument pertains to both 11 and 13, so that you're challenging them both on basis? That's correct, Your Honor. 11 and 13 both dealt with access device fraud relating to the two separate incidents regarding two separate credit cards at two different hotels at different times. He only got one 24-month enhancement, however, because we're able to group those two together for the consecutive mandatory sentence. But they both relate to 11 and 13, yes, Your Honor. So you are contending that 11 is also incorrect? Yes, 11 and 13. And I hope I have those numbers right. I think you do. Yeah. Yeah, you do. Thank you. Any other questions on that issue? I'm going to rely on the briefs for the other issues for the most part. You know, this is one of those sad cases where the ---- Just a second. I thought 11 was using the means of identification during or in relation to forbearance of a conspiracy, right?  Yes, yes. That's what I was talking about. Okay. So did I misspeak when I was talking to you? Okay. So that's ---- And so what's your argument on 11 that the means of identification of another is just the underlying claim? So it's the same argument with regard to 11 as 13? Yes, it's the same argument with regard to 11 and 13. Okay. My recollection is that these relate to the two different incidents at two different hotels involving two different credit cards or debit cards. Wait, wait, wait, wait. 11 and 13 are two different incidents, not two different crimes? I mean, not the same incident with two crimes charged? There were two times, as alleged in the indictment, where Mr. Popa went to a casino and tried to use one of these stolen credit card or debit cards. For each of those incidences, they charged him separately. Separately, right. And then they also charged him with use of identification of another separately. That's my understanding of what these two counts are. Okay. I thought one was use of means of identification in connection with a conspiracy, and then the other one wasn't in connection with a conspiracy. Maybe I got this wrong. No. For both of those two incidences, for the companion crime, the underlying crime he was charged was conspiracy. Okay. So they're both conspiracy. Okay. Both arise out of the conspiracy convictions. All right. Means of identification in connection with a conspiracy. All right. You know, and I would also emphasize that, you know, use in furtherance language as additional support for looking at Congress's intent that this be a separate charge or a separate crime with some separate facts. And we do have some legislative history on this. And if we look at in Mitchell under subsection A, they quote from it. And it says that the statute was enacted to, and I quote, provide enhanced penalties for persons who steal identities to commit terrorist acts, et cetera. An offense occurs. I'm sorry. Yeah. So what they're saying is we're not just looking at every single credit card fraud as an identity theft crime. There's got to be something additional in order to have these enhanced penalties in these special circumstances. In this case, Mr. Popa, at least as alleged, didn't steal anybody's identity. He stole their credit cards and tried to use them. In terms of the other issues in the brief, I was about to say this is one of those unfortunate cases where somebody's been in the United States. They come here at a fairly young age. They have family here. His mother's here. Ten years go by, whatever it is, he commits a crime. And now he's in the position of having to go back to Romania. Obviously, we're not going to win this case on sympathy for the Court. But I do want to make clear that that's an important issue here as well. So I don't mean to undermine it. Let me ask you this. The statute that required the district court to revoke his citizenship certificate or cancel his naturalization papers, it seems to be mandatory when there's a conviction. That's true. So your argument has to be that there was really an attack on the conviction, that it was not supported by substantial evidence. That is. And I've made that argument in the brief. As this Court is aware, that's a very difficult argument to make and win on, especially in light of how this case was handled in the district court. But we do think that in this case there is insufficient evidence to show that Roberto Popa was part of this wide-ranging conspiracy over many years. As the district court acknowledged, he was a minor player in this. There were two incidences that made up the charges, these two hotel incidences. And the government's star witness, who was one of the major players in this case, Steven Nagu, could only say that, well, Mr. Popa got more than $1,000, and I think, you know, I heard that he was part of this wide-ranging conspiracy. There really wasn't much evidence in terms of this being a large conspiracy of which Mr. Popa had agreed to participate rather than a couple of ad hoc acts. Unless the Court has any other questions right now, I'd like to reserve the rest of my time. Good morning. May it please the Court. Adam Flake for the United States. I'd like to start out by addressing the convictions for on count 11 and 13. The Congress clearly intended the statute. So, okay, so I'm on the right page. Those are both for using, what, the identity device in connection with a conspiracy, right? Tell me what they are. Well, the underlying counts, counts 6 and 7, are under 1029. Those are access device fraud. Okay. The counts 11 and 13 are for aggravated identity theft, for using the means of identification of another person to commit counts 6 and 7. 1029 is the predicate offense. Okay. And 1028A is the enhancement that you get if you use the means of identification of another person to commit that crime. I submitted a supplemental letter to the Court, a 28J letter. I hope that the Court received that. I'm sure we did. Okay. And in that letter I discuss an 11th Circuit case called Bonilla, in which the 11th Circuit addressed a very similar argument, saying that by having the same conduct that formed the predicate offense and the enhancement, the Court had violated the conviction for the enhancement, violated the Double Jeopardy Clause. But the 11th Circuit rejected that, and they said the inquiry into Double Jeopardy, the first step of the inquiry is whether Congress intends for the punishment to be what Congress intends the punishment to be. And if Congress intends the conduct to be punished under two different statutes, that ends the inquiry. That's Garrett v. United States. The 11th Circuit looked at the legislative history of 1029A, and it says, this two-year penalty enhancement is in addition to any term of imprisonment for the underlying offense. And with that, they ended the inquiry. They said this is what Congress intended. Even though the same conduct could be used for the predicate offense and the enhancement, Congress clearly manifested its intention. Will there always be a, if there's a violation of the predicate, if the predicate offense is established, does that, will there always mean that there will be a sufficient basis for the enhancement? I don't think so, Your Honor. I think it's rare. Say that with some reservation. I think that it's, I will grant you that it would be rare, but I think that it is possible to commit a violation of 1029 with a fake credit card, something that you could print off of your printer at home, and if you managed to, I mean, it would be difficult to do because, you know, you can swipe a credit card and determine that it's real, but, you know, if you gave it to a cab driver or someone that just makes a copy of it and doesn't call it in, you could violate 1029, but you wouldn't have the means of identification of another person on that credit card because it would be, it wouldn't identify anybody. It would be a complete fake. Whereas here, if you have a real credit card that you can swipe in the airport terminal and it pops up saying, Good morning, Mr. Flake. You have a means of identification. It's a real credit card. It can be used to identify you. And, therefore, it would fit into the definition of a means of identification under 1028A. So what you're saying is that an access device is a very broad term as defined and it might cover something totally fake. Yes. I'm just wondering how that would work. But I suppose people are clever. I suppose they could invent something. But just to be clear, I want to make clear that I don't think it is necessary for there to be some conduct that couldn't be punished under the first statute for the second statute to apply. Also, in my supplement. Why is that? For example, the armed bank robbery statute, and I address this in my letter, 18 U.S.C. 2113D, it has a mandatory minimum if you rob a bank using a dangerous weapon. There's a second statute, 18 U.S.C. 24C, which says if you commit any of these enumerated offenses using a firearm, you get a mandatory enhancement. Now, the gun that you use for the bank robbery is the same gun, the gun for the 2113D offense is the same gun that you use to do the bank robbery. Armed robbery offense. Yes. And this Court has specifically addressed the double jeopardy claim in that context in the case cited in my letter, but it's called Brown. And it says that in that case the Court said double jeopardy does no more than prevent greater punishment than the legislature intended. And it looked to the legislative history of 924C that very clearly said we, the legislature, intend that this punishment run consecutively to any other punishment given. And that's exactly the case that we have before us with these two statutes. We have an additional punishment but clear legislative intent saying we, the legislature, intend this punishment to run consecutively to any other sentence. Okay. Now, what do you say about the light, about the devices that were used or the documents that were used? That's another point I wanted to make. I admit that I didn't press this in my brief, but I think that the Court can not necessarily need to disagree with the Mitchell case, the Fourth Circuit Mitchell case, to find that the driver's license itself was a means of identification in this case. The Mitchell case is quite different from the facts that we have here. In Mitchell, the defendant had a fake driver's license and a counterfeit check with a name that he just made up out of thin air, as far as I could tell, on both the driver's license and the counterfeit check. That's not what happened here. We have a credit card that was stolen out of Scott Winter's wallet in Seattle and a driver's license that was tailor-made to look like Scott Winter, the victim's driver's license. It has Scott Winter's name on it and Mr. Popa's picture on it. But if you look at the language of the statute where it defines the term, the means of identification, this is 18 U.S.C. 1028d, the term means of identification means any name or number that may be used alone or in conjunction with any other information to identify a specific individual. He had this driver's license with a name on it. He had a credit card. The combination of those two documents, there's no doubt that you could identify the victim in this case, Scott Winter. There's no question that he could identify a specific individual using these documents. The problem in Mitchell was it was coincidence that he happened to pick a name that belonged to somebody else. But, you know, the counterfeit check didn't tie into a bank account that this victim had. There was no chance, excuse me, this imaginary person that happened to coincidentally coincide with someone. There was no chance that there was going to be an actual victim. Whereas in our case, these people got their credit cards stolen. The fraud revolved around him trying to, you know, trick a cashier into drawing money on that victim's account, and the driver's license was one of the documents that he used to try to effect that fraud. And so I don't know if that would be the facts here, but how about just the use of a false ID without anything else? I'm sorry, what's the? So suppose here he didn't have, he didn't use a credit card in conjunction with. I'm just curious about whether a license could ever be a. I hadn't thought about that. He wouldn't have committed the predicate offense in this case. He wouldn't have violated 1029 without the access, without doing access device fraud, and therefore the enhancement, doing access device fraud using the means of identification of another, it wouldn't, I don't think that the enhancement, I don't know how to interpret the enhancement statute without, without looking to what the predicate offense was. I hope that answers your question. I'm not trying to be obtuse. Here, the license really isn't a, doesn't qualify under the statute without the credit card. That's right. It takes the two. That's correct. Okay. You started by discussing council 11 and 13. I'm not sure. Is your position that they essentially are the same as far as being a requirement for the enhancement in the additional 24 months? Are they, or are they distinguishable? Can an affirmance of 13 be enough? I want to make sure I understand Your Honor's question. Yeah. Are you asking what would happen if one of the two counts was dismissed and the other one was kept in place? Yes. The 24-month sentences on 11 and 13 ran consecutively to the other sentence, but they ran concurrently with each other. And so if the court were to dismiss one or the other of 11 and 13, it's my understanding that the other would, he would spend the same number of days in jail if one of those two but not the other was found to be invalid. The, we pointed out at sentencing that the court had, the way the statute is written, the court had discretion, the court did not have discretion to run the 24-month enhancement concurrently with the whole sentence, but it did have discretion to run it concurrently with each other, and he chose to, the judge chose to do that. But I take it the legal issues are exactly the same with respect to 11 and 13. Yes, Your Honor. Okay. If the court would like me to address anything else, I'd be happy to answer your questions, and otherwise I'd ask the court to affirm Mr. Pope's sentence. Thank you. All right. Yes. Just to be clear, the legal issues are the same with regard to 11 and 13. Except one goes, they both go. They would have to both go in order for Mr. Pope to get any relief. And they're the same because the driver's licenses that were used were equivalent. They both had the victim's name, but all the other information. And credit card access device. Right. Right. So they rise and fall together. Exactly. Rise and fall. Yeah. Okay. And just to address the double jeopardy issue from the supplemental brief in the Bonilla decision, we've not made a double jeopardy argument. We're not arguing double jeopardy because the statute doesn't present a double jeopardy issue because it requires separate conduct for the companion conviction and the enhancement for the identification. What they're trying to do here is actually conflate the two. But our argument is that's not what the statute is intended to do and that there isn't any separate conduct here. Let me just get the court's indulgence here for a second. I do want to mention that it's telling that the government won't concede, that what they're really arguing is every time you have a credit card, use of access device by means of using a credit card, a stolen credit card, that you have an identity theft, an aggravated identity theft crime as well. Because that really is the heart of their argument. And it clearly goes against the congressional authority. It goes against the reasoning in the Mitchell case. And I hope that the court will see it this way. In terms of the other issues in the appeal, I do just want to again remind the court that we're not abandoning any of those. There was one issue raised in a footnote in the answering brief regarding whether Mr. Popa was arguing that the government That's not one of the arguments that we were making in the brief. It wasn't raised below. I do want to mention to the court that Mr. Popa has asked that that be part of his appeal. And I just want to make it clear that he's not intending to waive that argument. We think it's implicit in the argument that we made here already regarding the means of identification. I have one minute left. Unless the court has any questions, I will rest. Thank you. Thank you. United States v. Popa is submitted at this time.
judges: Restani, Hug, Paez